**FANENE AIPOPO LAULU, Plaintiff**

**v.**

**DOTTIE T. MALAUULU, CATHY TAITO, and the ESTATE OF AFA TAITO MALAUULU, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 67-90

May 21, 1996

Before RICHMOND, Associate Justice, BETHAM, Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel:      For Plaintiff, Gata E. Gurr
              For Defendant, Arthur Ripley, Jr.

Order Denying Motion for Reconsideration:

On December 26, 1995, this court issued an opinion and order ("our order") denying the prayer by plaintiff Fanene Aipopo Laulu ("Fanene") for defendants' eviction from the lands Lalotoga and Asofitu in the Village of Nu`uuli. We held that defendants were members of the Fanene family and could not be evicted without consensus support of the family for that action. The present motion to reconsider came regularly before the court on February 2, 1996, with counsel for both parties present.

## DISCUSSION

The motion to reconsider alleges three errors: (1) that our reliance on Samoan customary adoption is unconstitutional; (2) that Tuli Taito and his wife Mafaufauga Malauulu, defendants' ancestors, were incorrectly found to be a members of the Fanene family; and (3) that our order infringed upon the rightful powers of matai under Samoan traditions.

A.      Samoan Adoption

Fanene argues that our finding that defendants are members of thc Fanene family by virtue of customary adoption is erroneous, because customary adoption is unconstitutional. This allegation of unconstitutionality is based on a separation of powers argument, which references no particular constitutional language and is unsupported by any other citation of legal authority. Fanene argues that creating law is the duty of the legislature, and that the courts therefore have no power to craft adoption policy.[1]

---

[1]     We understand Fanene's unsupported argument that the adoption statute preempted the field when it was enacted, and therefore eliminated Samoan customary adoption as an acceptable method of creating legally binding parent-child relationships. We search the statute in vain, however, for any language purporting to outlaw customary adoption. Customary adoption is not a shortcut to full adoption, since it does not result in the same broad

46

■ This argument ignores centuries of tradition of enforcing custom through judge-made law in such areas as tort, contract, real property, and other common law areas. Furthermore, A.S.C.A. § 1.0202, one of the oldest and most fundamental of statutes in American Samoa, requires that Samoan custom be enforced by the courts whenever we can do so without violating the constitutions and statutory law applicable in American Samoa.[2] The Revised Constitution of American Samoa, art. I § 3 declares it the policy of the Government of American Samoa to protect the "Samoan way of life," and we should therefore construe statutory law in harmony with Samoan custom when we can do so without abusing the language of the statute. We do not read the adoption statute as forbidding Samoan customary adoption.

Informal adoption is a well-established tradition in Samoa, and has long been recognized by the courts of American Samoa. *In re a Minor Child*, 20 A.S.R.2d 49, 50 (Trial Div. 1992); *In re a Minor Child*, 19 A.S.R.2d 97, 98 (Trial Div. 1992); *In re Two Minor Children*, 15 A.S.R.2d 28 (Trial Div. 1990); *In re a Minor Child*, 4 A.S.R.2d 138 (Trial Div. 1987); *Leasiolagi v.*

---

legal consequences as formal adoption. Samoan customary adoption does not immediately "affect the legal rights and obligations of the parties" with regard to financial support, and is, therefore, not required to be formalized in a court proceeding. *In re Two Minor Children*, 15 A.S.R.2d 28 (Trial Div. 1990); *see also In re A Minor Child*, 20 A.S.R.2d 49, 50 (Trial Div. 1992); *In re A Minor Child*, 19 A.S.R.2d 97, 98 (Trial Div. 1991). Customary adoption does, however, result in the adopted children becoming family members with the same rights as blood members to inhabit family lands. *Leasiolagi v. Fao*, 2 A.S.R. 451, 452-53, 456 (Trial Div. 1949); *Fao Family v. Fao*, 2 A.S.R. 299, 302 (Trial Div. 1947). Even under western law an equitable adoption permits a child that has not been formally adopted to inherit from the estate of custodial caregivers when the child has acted and been treated exactly the same as a formally adopted child. *Estate of Fuimaono*, 23 A.S.R.2d 33, 34 (Trial Div. 1992).

[2] The first predecessor to the aforementioned statute, using very similar language and structure, was enacted by executive order of American Samoa's first Navy Governor on May 1, 1900, less than a month after the Cession of Tutuila. Codification of the Regulations and Orders for the Government of American Samoa § 3(2)-(3) (1917). This statute demonstrates the longstanding historical commitment of the United States to the preservation of Samoan custom in American Samoa.

47

*Fao*, 2 A.S.R. 451, 452-53 (Civil Div. 1949). In the face of the substantial judicial precedent recognizing Samoan customary adoption, we are amazed that Fanene blindly questioned its constitutionality without his counsel researching and intelligibly framing the constitutional issue, citing relevant case authority, and making a good faith argument for modification of existing law. The separation of powers argument is a complicated constitutional doctrine and should not be recklessly resorted to as a matter of guesswork or "fishing."

B.      Tuli Taito and Mafaufauga Malauulu

Fanene argues that Tuli did not consider himself and his wife Mafaufauga to be members of the Fanene family. This argument is founded on Tuli's unsworn statement during a hearing in a 1946 proceeding before this court. He answered "No" when asked "are you a member of the Fanene family?" *Fuamatu v. Fanene*, HC Case No. 11-1946, transcript of hearing on petition for injunction at 7 (Sept. 16, 1946).[3]

Fanene then asserts that the testimony in *Fuamatu* clearly shows that the Fanene family also did not consider Tuli and Mafaufauga to be members of the Fanene family. He claims that a letter, dated July 24, 1951, in the *Fuamatu* case file, signed by Talimanava as the Acting Fanene, documents this family position.[4]

---

[3] We took judicial notice of this case at the request of both parties. We also cited it in our order for the point that Tuli knew and recognized that the lands at issue in this action, Lalotoga and Asofitu, were the Fanene family's communal lands. Fanene also used this case in his trial memorandum, filed May 26, 1994, for a different proposition, namely, that Tuli agreed in 1946 that he and Mafaufauga would live on Asofitu only so long as Fegaui`ai Touli's lived, and after Fegaui`ai's death, since they were not blood members of the Fanene family, they were mere licensees in exchange for service to the Fanene family during their holdover possession. Fegaui`ai was the wife of Touli Tapusu, with whom Tuli and Mafaufauga lived when we found each was adopted into the Fanene family by Samoan custom.

[4] We take judicial notice of *Pasene v. Talimanava*, HC Case No. 17-1951 (Oct. 26, 1951). This court awarded the Fanene title to Fanene Penilosa in that case. In 1950, Talimanava applied to register the vacant Fanene title following the death of Fanene Tu`utau. Pasene and Penilosa objected and became candidates for the title. Clearly, Talimanava had no authority to represent himself as the Acting Fanene when *Pasene* was still pending in

48

Fanene conveniently overlooks the Tuli's answer: "but my wife is related to the old man Touli that we have been taking care of and when he died that Fanene should take care of the children." *Fuamatu*, transcript at 7. This statement not only confirms the customary adoption, but also indicates a blood connection through Mafaufauga. Further, indicating anything but a unified family front, Fanene Tu`utau was a defendant in *Fuamata* and confirmed Tuli's statement. *Id.*, transcript at 4 and 7. We read the *Fuamata* transcript and other file records as supporting, not negating, our finding of the Samoan customary adoption.

## C.     Powers of the Matai

Fanene alleges that his pule, or authority, over Fanene land was undermined by a variety of actions by defendants. These issues were adequately addressed and resolved on pages 4 through 7 of our order, and Fanene's cursory repetition of his unsuccessful argument gives us no reason to revisit our factual findings.

Fanene takes issue with our holding that consensus support is required to revoke an assignment of family land, citing *Tiumalu v. Scanlan*, 4 A.S.R. 194 (Trial Div. 1961), for the proposition that nothing can interfere with the pule of the matai as long as it is exercised fairly and justly. We do not read *Tiumalu* this broadly. The *Tiumalu* Court held that family lands "are under the matai's control and jurisdiction and that the matai has the authority to assign a piece of family land to a member of the family, and that it is not necessary to have a family meeting to discuss the matter prior to the assignment." *Id.* at 198.

■ Although we agree that a matai may create an assignment without the prior consent of his family, it does not follow that a matai may unilaterally act to revoke an assignment. In fact, the Appellate Division recently held

---

July 1951. Further, although allegations of candidate fraud flourished, the Fanene family was considerably numbered in 1950-51. Pasene accumulated 318 signatures on his petition; Penilosa 273. Talimanava garnered only 34, hardly indicating widespread support within the family. The court found that the majority of the family favored Penilosa. Moreover, we have not located any record of the court acting on Talimanava's call, in his 1951 letter, for enforcement of Tuli's contingent subsequent agreement made during the *Fuamata* case.

that an assignment of communal land may not be revoked without consensus support of the family. *Pen v. Lavata`i*, 30 A.S.R.2d 10 at 18 (App. Div. 1995). On this point, Fanene also complains that we erred in holding that family consensus did not exist for defendants' removal and the building of an apartment complex in their place. Fanene alleges that eight of 10 lesser matai support Fanene's decision and asks whether "consensus" requires a majority of the matai in the family or a majority of the family members in total. We quote the Appellate Division in *Pen*:

> Governing by consensus is the Samoan way. Consensus is not democracy by ballot, where one side wins and the other loses. Rather, consensus governance is a system designed to promote harmony within the family by discussing issues and gradually melding opinions and wills so that in the end everyone involved is satisfied, and all objections are resolved, or at least withdrawn.

*Id.*, 30 A.S.R.2d at 19. Clearly, Fanene did have that kind of consensus to support his decision.

The motion for reconsideration or a new trial is accordingly denied.

It is so ordered.